FILED'09 NOV 12 12:56 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN MATTHEW AUST,                                              CV. 07-1284-PA

        Petitioner,

v.                                                               OPINION AND ORDER

CHUCK SEELEY,

        Respondent.

KRISTINA S. HELLLMAN
    Office of the Federal Public Defender
    101 SW Main Street, Suite 1700
    Portland, OR  97204

        Attorney for Petitioner

JOHN KROGER
Attorney General
JONATHAN W. DIEHL
Oregon Department of Justice
1162 Court Street, NE
Salem, OR  97301

        Attorneys for Respondent

1 - OPINION AND ORDER

Panner, District Judge.

Petitioner, an inmate at Warner Creek Correctional Facility, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He challenges the legality of his 2000 state court conviction, alleging violation of his due process rights and violation of his right to the effective assistance of counsel. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#26) is DENIED.

## BACKGROUND

In May, 2000, Petitioner was indicted on one count of Rape in the First Degree based on allegations by his 19 year old housemate, Betty Warner ("Warner").[1] Following a trial by jury, at which both Petitioner and Warner testified, Petitioner was convicted and sentenced, under Measure 11, to 100 months imprisonment without the possibility of parole or sentence reduction.

Petitioner's defense at trial was that he and Warner had consensual sex. In his opening statement, the prosecutor stated: "Detective Kipp will tell you that the defendant was given every opportunity to, to tell him about any kind of consensual sex, but he never did. In fact, he denied it." (Trial Tr. at 24.) Trial counsel moved for a mistrial on the basis that the prosecutor had

---

[1] Warner was Petitioner's ex-girlfriend's daughter. Petitioner had been a father figure to her from the time she was about 6. He offered her and her 3 month old and almost 4 year old children housing approximately 4-6 weeks prior to the incident leading to his conviction.

2 - OPINION AND ORDER

improperly inferred to the jury that Petitioner invoked his right to remain silent under *Miranda*. (*Id.* at 25-26.) The prosecutor argued Petitioner provided all kinds of information during the interview, but never said it was consensual sex despite Detective Kipp telling him that there was no problem if it was consensual since Warner was over eighteen. (*Id.* 25-27.) The trial court sought to discern what Petitioner's response had been to Detective Kipp telling him that consensual sex wasn't a crime. (*Id.* at 29.) Detective Kipp explained to the court that during his interview with Petitioner he tried to make clear that the primary issue was whether there was force used, and that consensual intercourse would be legal. (*Id.* at 29-30.) The following exchange ensued:

> The Court: [T]he representation was that, somewhere in the process of the interview with [Petitioner], he was asked or, I don't even know if he was asked, but inferentially, he was asked that if this involved sexual intercourse with a female over the age of eighteen and it was consensual, that that was not a crime.
>
> Now what you told me indirectly, and I don't know whether this was asked multiple times or the statement was made multiple times. I think what you're inferentially are saying is that there was an initial introductory statement made to [Petitioner] that deals with that. I don't know if you folks have a transcript of this interview or not, but - - what, what you've indicated is that, repeatedly through the statement, that [Petitioner] indicated that no sexual act occurred.
>
> Detective Kipp: Yes.
>
> [Trial Counsel]: And I disagree, Your Honor. I, I think the question was, did he have, did he have forceful intercourse, and he said "no." He never did say, "I never had sex with her," he never did on the tape.

3 - OPINION AND ORDER

>    The Court: [W]ell, I haven't listened to the tape, Counsel and you folks apparently have. So you're putting me in an unfair disadvantage because you're asking me to make rulings on voluntariness and admissibility or inadmissibility of particular statements without listening to the tape, without having a transcript to consult and not knowing what the exact verbiage that was made by the parties. And apparently there was a taped interview.
>
>    So in relationship to your request for mistrial at this point, deny it. If you want to make any further foundation of a record you're welcome to do it . . . .

(*Id.* at 31.) Neither party introduced the tape or a transcript of the interview, and neither party made a motion for the judge to review the interview.

The prosecution presented its case through testimony from Warner, from the father of her youngest child with whom she lived prior to moving in with Petitioner and whom Warner called from the police department to care for her children, from the three law enforcement officers who interacted with Warner the morning she reported the rape, from the Sexual Assault Nurse Examiner ("SANE") who conducted Warner's exam, from the physician advisor to the SANE nurses, and from the lab technician who collected a DNA sample from Petitioner. Numerous photographs, as well as physical evidence and lab reports were also presented.

At the close of the prosecution's case, counsel renewed his motion for mistrial, again based on the prosecution's reference in opening statements to Petitioner failing to tell the investigating officer the contact was consensual. (Trial Tr. at 188.) The prosecutor argued his opening statement wasn't limited to the

4 - OPINION AND ORDER

State's evidence, but could address all the evidence, including the defendant's anticipated testimony that the encounter was consensual. (*Id.* at 188-189.) The trial court noted that, while a defendant's invocation of the right to remain silent cannot be commented on, the content of a voluntary statement prior to the invocation can be commented on. The court stated:

> So when somebody in a voluntary statement asks another person as to, or brings up, and then a person makes a reaction prior to an invocation or doesn't make an a reaction to that, then that probably can be fair game.
>
> But at this point, I simply don't have enough information, based on the nature of the statement that was taken by Detective Kipp because it wasn't gone into in the case in chief. I'm going to deny the motion for mistrial.

(*Id.* at 190.)

Petitioner testified in his own defense, and on cross-examination the prosecutor asked a series of questions relating to Petitioner's taped interview with Detective Kipp. Trial counsel objected when the prosecutor asked: "Isn't it a fact that several times Detective Kipp said, hey, if this was, Better Warner is over eighteen, and if you had consensual sex with her, there's nothing illegal about that. Isn't that true?" but the court overruled the objection. (Trial Tr. 222-23.) Petitioner replied he didn't recall that. During cross-examination, Petitioner acknowledged several times that he had not told Detective Kipp that he and Warner had consensual sex. (Trial Tr. 223, 226-27.)

5 - OPINION AND ORDER

Detective Kipp was recalled as a rebuttal witness, and the trial court overruled trial counsel's objection. (Trial Tr. 300-01.) Detective Kipp testified that in the taped interview Petitioner never told him he had consensual sex with Warner, and that he had explained to Petitioner several times there was a big difference between consensual sex with someone over eighteen - even if it involved rough sex - versus using force to have a sexual encounter. (*Id.* at 302-303.) In closing arguments, the prosecutor reminded the jury that Petitioner had not told Detective Kipp the encounter was consensual, despite the officer telling Petitioner a consensual encounter would not be illegal. (Trial Tr. 349-50.)

Petitioner directly appealed his conviction, with appellate counsel filing Section A of a *Balfour* brief and Petitioner filing Section B, raising as error the trial court denying his motion for mistrial based on the prosecution's opening statement. The Oregon Court of Appeals affirmed without a written opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 105, 107.)

Petitioner filed for Post Conviction Relief ("PCR"), but the PCR court denied relief. (Respt.'s Ex. 118.) Petitioner appealed, with PCR appellate counsel filing Section A of a *Balfour* brief and Petitioner filing Section B, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 121, 122.)

In the instant petition, Petitioner raises two grounds for relief: Ground One, alleging violation of Petitioner's right to

6 - OPINION AND ORDER

due process of law when the trial court denied Petitioner's motion for mistrial after "the prosecutor improperly commented on [Petitioner's] silence and urged the jury to infer guilt based on that silence; and Ground Two, alleging ineffective assistance of trial counsel when counsel "failed to present the court with a videotape of the police interview which was the critical evidence needed for the trial court to grant his motion for mistrial." (#26, Amended Petition at 3.)

## DISCUSSION

I. Standards and Scope of Review

Under 28 U.S.C. §2254(d):

An application for writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court construed this provision. "[I]t seems clear that Congress intended federal judges to attend with the utmost care to state court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance

7 - OPINION AND ORDER

of the writ." *Id.* at 386. "We all agree that state court judgments must be upheld unless, after the closest examination of the state court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Id.* at 389. The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002).

<u>Contrary to, or unreasonable application of clearly established Federal law</u>

Habeas relief may be granted under § 2254(d)(1) when "the state court identifies the correct governing legal principle [ ] but unreasonably applies that principle to the facts of the [ ] case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*[2]), *cert. denied*, 126 S. Ct. 484 (2005). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* A state court decision is "contrary to" clearly established Federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams*, 529 U.S. at 388.

An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct

---

[2] *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*) (relief may be granted when the state court decision was objectively unreasonable in light of the record before the court)

8 - OPINION AND ORDER

governing legal principle [ ] but unreasonably applies that principle to the facts of the [ ] case." *Lambert* at 974 (citing *Williams*.) The state court's application of law must be *objectively unreasonable*. *Id*. (emphasis added). "Under §2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [the law] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [the law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 24,25 (2002), rehearing denied, 537 U.S. 1149 (2003), (internal citations omitted).

II. <u>The Merits</u>

   A. <u>Ground One</u>

Petitioner alleges his right to due process of law was violated when the trial court denied his motion for mistrial after the prosecutor "improperly commented on [Petitioner's] silence and urged the jury to infer guilt based on that silence." Petitioner argues it was a violation of *Doyle v. Ohio*, 426 U.S. 610 (1976), for the trial court to have allowed the prosecutor to raise Petitioner's failure to disclose he had consensual sex with Ms. Warner to Detective Kipp. (#27, Memorandum at 25-30.) Respondent contends the trial court's denial of Petitioner's motion for mistrial was consistent with *Doyle* and with *Anderson v. Charles*,

9 - OPINION AND ORDER

447 U.S. 404 (1980) (*Doyle* does not apply to cross-examination that inquires into prior inconsistent statements). (#32, Response at 8.) Respondent further asserts that, even if the trial court did err in its ruling on the motion for mistrial, the error was harmless. (*Id*. at 12.) The trial court record is the basis for this Court's review.

<u>Established Supreme Court Precedent</u>

*Doyle v. Ohio*, established that "the use for impeachment purposes of [a] petitioner['s] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." 426 U.S. 610, 619. In *Doyle*, the defendants were arrested, given *Miranda* warnings, and made no statements. At trial, their silence was used to impeach the exculpatory explanation of events they gave in court. The Supreme Court held that the Due Process Clause prohibits using a defendant's silence after *Miranda* warnings are given, even for the limited purpose of impeachment, on the theory that the *Miranda* warnings carry an implicit promise that no use will be made of a defendant's silence. 426 U.S. at 619.

In subsequent decisions, the Supreme Court ruled on the application of *Doyle* under varying circumstances. In *Jenkins v. Anderson*, 447 U.S. 231, 238-240 (1980), the defendant surrendered to government authorities approximately two weeks after a killing. He testified at his trial for murder that he acted in self-defense.

10 - OPINION AND ORDER

During cross-examination, the prosecutor used the defendant's two week, pre-arrest silence to impeach his credibility, suggesting the defendant would have spoken out earlier if he had in fact acted in self-defense. The Supreme Court held that impeachment with pre-arrest silence is permissible, stating: "Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative." 447 U.S. at 239 (internal citation omitted).

In *Anderson v. Charles*, 447 U.S. 404 (1980)(per curiam), the defendant was arrested and given *Miranda* warnings, but he told law enforcement officers one version of how he came to be in possession of a murder victim's car. On cross-examination at trial, he gave a different version of events. The prosecutor challenged the defendant's credibility based on his failure to tell law enforcement the version of events he had just testified to. The Supreme Court held *Doyle* does not apply to cross-examination that inquires into prior inconsistent statements because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. The court noted the petitioner had not been induced to remain silent and "[t]he questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." 447 U.S. at 409.

11 - OPINION AND ORDER

In *Fletcher v. Weir*, 455 U.S. 603 (1982)(per curiam), the defendant testified at his trial for intentional murder that he acted in self-defense. The prosecutor questioned the defendant as to why he failed to assert self-defense and disclose the location of the knife when he was arrested. The Supreme Court held: "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony." *Id*. at 606-607. The Court noted the absence of *Miranda* warnings, and that no governmental action induced the petitioner to remain silent.

In *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993), the Supreme Court held that when a habeas court determines on collateral review that a *Doyle* violation occurred, the court must conduct an analysis to determine if the constitutional error had a substantial and injurious effect or influence in determining the jury's verdict. The Court established that the *Kotteakos v. United States*, 328 U.S. 750 (1946) harmless-error standard applies on collateral review in determining whether habeas relief must be granted because of constitutional error of the trial type. *Kotteakos* places the

12 - OPINION AND ORDER

burden on prosecutors to explain why those errors were harmless, requires a habeas court to review the entire record de novo in determining whether the error influenced the jury's deliberations, and leaves considerable latitude for the exercise of judgment by federal courts. *Brecht*, 507 U.S. at 641 (Stevens, J., concurring)(what *Kotteakos* review requires).

<u>Analysis</u>

Petitioner argues it was a violation of *Doyle*, for the trial court to have allowed the prosecutor to raise Petitioner's failure to disclose he had consensual sex with Warner to the investigating officer. (#27, Memorandum at 25-30.) In considering Petitioner's renewed request for a mistrial at the close of the prosecution's case, the trial court stated:

> Again, the issue that I raised before is that if he's advised of his Miranda rights, he agrees to talk to the police officers, and he issues a voluntary statement, that the, the State is permitted to go into that. I mean, there's not, defendant's statements are not excluded prior to them invoking their right against self-incrimination. His invocation of the right against self-incrimination certainly is something that cannot be covered and you get into a dicey area.
>
> But it isn't in the area that's without a fair amount of case law and, and some fairly complex rulings both by the United States Supreme Court, the Oregon Supreme Court, and the Oregon Court of Appeals. So when somebody in a voluntary statement asks another person as to, or bings up, and then a person makes a reaction prior to an invocation or doesn't make an [sic] a reaction to that, then that probably can be fair game.
>
> But at this point, I simply don't have enough information, based on the nature of the statement that was taken by Detective Kipp because it wasn't gone into

13 - OPINION AND ORDER

in the case in chief. I'm going to deny the motion for mistrial.

(#17, Trial Tr. at 190.) A review of the record leads this Court to conclude that the trial court's determination was neither contrary to nor an unreasonable application of established Supreme Court precedent.

Petitioner voluntarily went to the Oregon State Police office where an interview could be held in private. (#17, Trial Tr. at 301; Respt's Ex. 115 at 33.) At the outset of the interview, Petitioner asked if he was under arrest and he was told, "Not at this time, but I do need to talk to you about what happened between you and Betty last night." (Respt.'s Ex. 115 at 1.) Petitioner was given *Miranda* warnings and when Detective Kipp asked if he was willing to talk, Petitioner replied, "kind of." (*Id.* at 4-5.) Detective Kipp let Petitioner know he could end the interview at any time. (*Id.*) The interview proceeded with Petitioner answering questions, albeit selectively and without an admission of any sexual contact, for approximately 30 minutes. (#17, Trial Tr. at 301-302.) Petitioner requested an attorney when he was told Warner had undergone an exam and there was physical evidence. (Respt.'s Ex. 115 at 22.) Before Petitioner requested an attorney, Detective Kipp raised the legality of consensual sex approximately four times, but Petitioner did not contend he and Warner had had consensual sex. (Respt.'s Ex. 115 at 8-9, 10, 12, 19.)

14 - OPINION AND ORDER

Once Petitioner asked for an attorney, Detective Kipp clearly stated Petitioner should answer no further questions, but he did not immediately end the interview. Instead, Detective Kipp reviewed the purpose of the interview, reminded Petitioner he had not provided the detective with his version of events and that Warner had undergone an exam, and he let Petitioner know he was willing to hear his story if Petitioner wanted to tell it. (*Id.* at 23-36.) The interview transcript ends without a determination on arrest being stated. (*Id.* at 36.)

The facts in Petitioner's case are different from those in *Doyle* and its progeny, notably that Petitioner was clearly told he was not under arrest at the outset of the interview. He was also told he could end the interview at any point, and he spoke with the detective for approximately 30 minutes after receiving *Miranda* warnings before requesting an attorney. Petitioner cites to *United States v. Caruto*, 532 F.3d 822 (9th Cir. 2008) to support his argument that the prosecution's use of his silence is not permissible. However, the petitioner in *Caruto* was under arrest, and invoked her right to counsel after five to seven minutes of questioning. Omissions from her post-arrest statement existed solely because she invoked her right to counsel. *Id.* at 824. Petitioner's omissions in the 30-minute interview with Detective Kipp cannot be attributed solely to his invoking his right to counsel. Rather, Petitioner's pre-arrest silence is more akin to

15 - OPINION AND ORDER

the pre-arrest silence in *Jenkins*, or the post-arrest silence in *Fletcher* because in raising the legality of consensual sex Detective Kipp was prompting a response that the encounter was consensual. The fact Petitioner was in a pre-arrest interview and had received *Miranda* warnings does, however, distinguish his case from *Jenkins* and *Fletcher*, and also from *Doyle* and *Anderson*.

Even if this Court assumes a violation of *Doyle* occurred, a review of the record leads to the conclusion that the prosecutor's reference to Petitioner's failure to tell the investigating officer the encounter was consensual did not have a substantial and injurious effect or influence in determining the jury's verdict. Petitioner testified that he and Warner had consensual sex, but under cross-examination he acknowledged he did not tell Detective Kipp during his interview. (#17, Trial Tr. At 226-227.) Thus, Petitioner testified to the information he objected to the prosecutor raising. Moreover, prosecution witnesses were credible and corroborated Warner's version of events, and photographic evidence supported her contention the encounter was not consensual.

Petitioner has not shown, nor does the record reveal that the trial court's decision to deny a mistrial was contrary to or an unreasonable application of established Federal law as determined by the Supreme Court of the United States. Accordingly, habeas relief on Ground One is not warranted.

/ / /

16 - OPINION AND ORDER

B.  Ground Two

Petitioner contends it was contrary to and an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), for the state PCR court to deny relief on his claim alleging ineffective assistance of trial counsel when counsel "failed to present the court with a videotape of the police interview which was the critical evidence needed for the trial court to grant his motion for mistrial."  The PCR trial court's adjudication of Petitioner's claim is the basis for this Court's review.

Under *Strickland*, a petitioner must prove his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* 466 U.S. at 694.  "Not every error that conceivably could have influenced the outcome undermines the reliability of the results of the proceeding."  *Id.* at 693.  Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation.  *Id.* at 690.  A

17 - OPINION AND ORDER

failure to prove either deficient performance or prejudice will cause the claim to fail. *Id.* at 697.

During the PCR trial proceeding, the court heard argument by both parties regarding the significance of the videotaped interview, and discussed portions of the transcript with them. (Respt.'s Ex. at 2-13.) The PCR court found "[Petitioner's] refusal to say that th[e] sex was consensual was fair game for the - for the prosecutor to argue." (*Id.* at 13.) The PCR court denied relief finding Petitioner had "failed to prove the allegations of the complaint." (*Id.*; Respt.'s Ex. 118.) The PCR court's factual findings are presumed to be correct absent Petitioner presenting clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

Petitioner emphasizes the trial court's statements when it denied his motion for mistrial that the court was at a disadvantage because it had not seen the video taped interview, or the transcript. However, the trial court clearly stated the basis for denying the motion for mistrial in its ruling at the close of the prosecutions case: "[W]hen somebody in a voluntary statement asks another person as to, or brings up, and then a person makes a reaction prior to an invocation or doesn't make a reaction to that, then that probably can be fair game." (*Id.* at 189-190.)

This court's review of the interview transcript leads to the conclusion Petitioner made voluntary statements in his pre-arrest interview with Detective Kipp, and that Detective Kipp mentioned

18 - OPINION AND ORDER

the legality of consensual sex to Petitioner four different times before Petitioner requested an attorney but Petitioner did not tell the detective his encounter with Warner was consensual. Nothing in the interview conflicts with or undermines the trial court's basis for denying Petitioner's motion and there is no reason to believe the trial court would have ruled differently upon reviewing either the video or the transcript. Thus, even if this court were to conclude trial counsel was deficient in not presenting the trial court with the video or transcript of the interview, Petitioner has not shown prejudice.

Under *Strickland*, a petitioner's failure to prove either deficient performance or prejudice is cause for a claim of ineffective assistance of counsel to fail. Accordingly, it was neither contrary to, nor an unreasonable application of *Strickland* for the PCR court to reject Petitioner's claim. Habeas relief is, therefore, precluded.

## CONCLUSION

Based on the foregoing, Petitioner's Amended Petition for Writ of Habeas Corpus (#26) is DENIED.

IT IS SO ORDERED.

DATED this __11__ day of November, 2009.

Owen M. Panner
United States District Judge

19 - OPINION AND ORDER